1. Where a motion for new trial contains only the general grounds, and the record discloses that the evidence for the State, if credible, was sufficient to support the verdict, the jury being the judges of the weight of the evidence, this court can not disturb the judgment of the trial court. Puckett v. State, 159 Ga. 230 (125 S.E. 208); Hudgins
v. State, 2 Ga. 173 (5). "The law allows him [the trial judge] to refuse or grant new trials in the exercise of a legal discretion but it does not give this court any discretion in the matter. It can only grant new trials when errors of law have been committed, or when the trial judge has abused his discretion in refusing a new trial." Smith v. State, 91 Ga. 188 (17 S.E. 68).
2. The judge having approved the verdict, we can not, in the light of all the evidence, say that he abused his discretion in overruling the motion for new trial.
Judgment affirmed. Broyles, C. J., and Gardner, J.,concur.
 DECIDED DECEMBER 5, 1945.
 STATEMENT OF FACTS BY MacINTYRE, J.
The defendant, President Brown, was convicted of burglary. His motion for a new trial was overruled, and he excepted.
The testimony of Mr. and Mrs. R. L. Duke, witnesses for the State, established the fact that their residence had been broken into and a pistol had been stolen; that they lived in the country; that the defendant lived across the road, opposite the residence of Duke, with his brother; that on the morning of May 14, 1945, the witnesses locked up their house and went to Griffin; that the defendant rode into Griffin with them; that he knew that no one had been left at the residence in question; that one could travel in fifteen minutes in an automobile from the residence to Griffin; that soon after they arrived in town they let the defendant "off" at the courthouse; that when they returned home that night they discovered that the house had been broken into. "We found the bedroom door was open and it had been closed, and we went to the kitchen and found that somebody had broke the lock on the back door. . . I missed the pistol from under the pillow on the bed. . . This was a nickel-colored pistol and had the picture of an owl on the handle of it. . . The whole house was ransacked." Duke further testified that he observed some "peculiar tracks" in the yard; that "the sheriff was there and saw the tracks with me. On the heel it looked like it had a `rex' or `deck' . . and I followed the sheriff to this defendant's house." Mrs. Duke testified in part that: "the last person that I know of that went in my house before this happened was his brother's wife, who lives in the same house with the defendant and her husband across the road in front of my house. . . This boy's [the brother's] wife came to my house the night before it was broken into the next day. At that time the pistol was in plain view of anybody that came in the room." Sheriff Middlebrooks testified for the State, in part as follows: "I found some tracks out in the yard. . . One track had a peculiar design on the rubber heel. I traced some tracks across the road to President Brown's house. There was a track leading down there and a track from there, and there were several tracks around in the yard that apparently were made by the same shoe. . . I looked at his shoes when I arrested him [the defendant], and I carried him in the back yard and asked him to pull off his shoe and he did; and he with me looked at the *Page 292 
design on the shoe and looked at the track, and then he said he made the tracks. . . The defendant said he made the tracks in the back yard up to the back steps, but that he did not go in the house, and that his brother went in the house and he watched for him while he was in the house burglarizing the house. He said his brother got a pistol out of the house, and I asked him what kind of a pistol, and he said it was a `shiny pistol' and that it had an owl head on the handle. He said his brother sold the pistol for eight dollars and he got one dollar for his part. . . The defendant was not offered any reward for the statement nor any fear of injury. It came freely and voluntarily. He freely admitted that he took part in the burglary of this house and that he got one dollar for his part." In his statement to the jury, the defendant denied his guilt, and said that the reason he told the sheriff "what he did" was that "they whipped me."